IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-00046 (WOB-CJS)

JOHN KYLE SWEENEY,
ET AL.                                                PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

JUSTIN CRIGLER,
ET AL.                                                DEFENDANTS

This is an action brought under 42 U.S.C. § 1983 challenging the constitutionality of a Kentucky election statute.

Having previously heard oral argument on the parties' pending motions for summary judgment (Docs. 56, 57, 58), the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A. **Kentucky Political Group Structure**

Kentucky law recognizes three tiers of political entities and affords them ballot access accordingly.

First, there are **"political parties."** These are groups "whose candidate received at least twenty percent (20%) of the total vote cast at the last preceding election at which presidential electors were voted for." KRS 118.015(1). The Republican and Democratic parties fall into this tier.

Second are **"political organizations,"** which are groups who do not meet the definition of "political party" but whose "candidate received two percent (2%) or more of the vote of the state at the last preceding election for presidential electors." KRS 118.015(8). The Libertarian Party of Kentucky ("LPKY") is such a "political organization."

And third, there are **"political groups,"** defined as a political group not falling within the above definitions of "political parties" or "political organizations." KRS 118(9). In other words, these are political entities whose candidate received less than 2% of the vote in the last preceding presidential election.

B. <u>Ballot Access</u>

"Political organizations" such as the LPKY have automatic ballot access for a four-year period following presidential elections, subject to certain filing requirements.

The first filing requirement — the one at issue in this case — is that candidates for state and local partisan offices (but not federal offices) must file a "Statement-of-Candidacy" form. Prior to the enactment of the legislation challenged in this lawsuit, that deadline was April 1. KRS 118.367(1) (eff. 6/24/03).

In 2019, however, the Kentucky legislature passed 2019 HB 114. Section 1 of that bill changed the Statement-of-Candidacy deadline from April 1 to "the last Tuesday in January." Former

2

Governor Bevin signed the bill on March 19, 2019, and by virtue of an emergency clause therein, it was made retroactive.[1]

HB 114 also made several additional changes to Kentucky election law that are relevant to the pending motions. First, the bill amended KRS 117.015 to characterize the State Board of Elections as "an independent agency of state government." KRS 117.015(1). Second, the bill designates the Secretary of State a "nonvoting" member of the Board. This means that the Secretary of State is no longer eligible to serve as chairman of the Board because the bill provides that the chairman must be a "then-current voting member of the board." KRS 117.015(3). Prior to the enactment of HB 114, the Secretary of State was automatically made chairman of the Board by the statute.

Finally, HB 114 created two new nonvoting seats on the Board of Elections to be filled by former county clerks appointed by the Governor. KRS 117.015(6). One of these new spots was filled by defendant Katrina Fitzgerald, who was sworn in immediately after then-Governor Bevin signed the bill.

However, the provisions in HB 114 altering the makeup of the Board of Elections did not originate in the House. Rather, those

---

[1] The legislature also passed 2019 SB 60, which purported to change the Statement-of-Candidacy deadline to "the first Friday following the first Monday in January." Under applicable Kentucky law, however, the deadline set in HB 114, which contains an emergency clause, controls. See Doc. 56-1 n.2.

provisions had first been introduced in the Senate, but they died in committee. When HB 114 — then containing only the change to the Statement-of-Candidacy deadline — was sent to the Senate for approval, the Senate added the Board of Elections alterations and returned the expanded bill to the House, where it was passed and then signed into law.

In March 2019, plaintiffs Hicks, Cormican, Hugenberg and Gilpin filed their Statements of Candidacy as Libertarian candidates for various state and local offices. They promptly received letters from the Office of the Secretary of State informing them that, due to the deadline changes effected by HB 114, the Secretary could not accept or process their filings "absent a court order." (Doc. 1-1).

### C. This Litigation

Plaintiffs filed this lawsuit on April 11, 2019, challenging HB 114's and SB 60's acceleration of the Statement-of-Candidacy deadline for independent candidates to January as: (1) unconstitutionally retroactive and thus violative of Due Process and Equal Protection; and (2) unconstitutional prospectively in violation of the First Amendment, as made applicable to the States through the Fourteenth Amendment. (Doc. 1).

Plaintiffs seek a declaration that the advancement of the Statement-of-Candidacy deadline is unconstitutional on its face and as applied to plaintiffs and minor political parties such as

4

the LPKY. Such a finding would have the effect of restoring the April 1 deadline. (Doc. 1 at 17-18).

### 1. Consent Orders and Preliminary Injunction

On April 24, 2019, the Boone County defendants entered into a Consent Order with plaintiffs in which they agreed that they did not wish to participate in these proceedings or to defend the legislation in question, and they agreed to be bound by any final determination of the Court. Plaintiffs, in turn, agreed not to seek attorney fees from the County defendants. (Doc. 10).

On May 6, 2019, plaintiffs filed an emergency motion for a temporary restraining order to enjoin defendants from enforcing the retroactive January 2019 filing deadline. (Doc. 13). On May 8, 2019, the Court held a hearing, after which it granted plaintiffs' motion and ordered that the Board accept the Statements of Candidacy submitted by plaintiffs. (Docs. 23, 24).

On May 31, 2019, the Board of Elections defendants likewise entered into a Consent Order, virtually identical to the one that plaintiffs entered into with the County defendants. (Doc. 34). Then-counsel for the Board of Elections signed the Consent Order on behalf of all Board defendants.

On June 13, 2019, however, defendant Katrina Fitzgerald moved to modify the Consent Order by the Board defendants so that she could defend HB 114. (Doc. 37). Over plaintiff's opposition, the Court granted Fitzgerald's motion on July 25, 2019. (Doc. 43).

5

The parties then completed discovery and filed the pending motions for summary judgment.

Under HB 114, the Statement-of-Candidacy filing deadline for this year will be **January 28, 2020**.

*Analysis*

**A. Challenge to Fitzgerald's "Standing"**

Defendant Grimes makes a threshold argument that defendant Fitzgerald lacks "standing" to defend HB 114 because she is just one member of the Board of Elections, which can only act as a body. This argument is not well taken.

Standing, in the constitutional sense, is only required where a party *invokes* a court's jurisdiction. *See Va. House of Delegates v. Bethune-Hill*, 139. S. Ct. 1945, 1951 (2019). Here, Fitzgerald has not invoked this Court's jurisdiction; rather, plaintiffs named her as a defendant in her official capacity, along with other members of the Board of Elections. As a named defendant, Fitzgerald does not need to have "standing."

Whether Fitzgerald has the *authority* to represent the position of the Board as a whole — which has chosen not to defend HB 114 — is a different question. But the Court need not reach that issue because, as discussed below, even considering Fitzgerald's arguments, the Court concludes that Section 1 of HB 114 is unconstitutional as a matter of law.

B. **The Constitutionality of Section 1 of HB 114**

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Supreme Court emphasized that the primary concern with state ballot access restrictions is their tendency "to limit the field of candidates from which voters might choose." *Id.* at 786 (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)). Such restrictions thus implicate basic constitutional rights to association under the First and Fourteenth Amendments. *Id.* at 786-87.

The Court also noted, however, that not all state-imposed ballot restrictions are constitutionally suspect, and that states necessarily have interests in regulating elections to manage the democratic process. *Id.* at 788.

Given these competing interests, the Court set forth a three-step inquiry for evaluating the constitutionality of ballot restrictions. First, the court must "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments." *Id.* at 789. Second, the court must identify and evaluate the "precise interests put forward by the State as justifications for the burden imposed by the rule." *Id.* Finally, the court must determine the "legitimacy and strength" of those interests and consider "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

7

### 1. Magnitude of Burden/Degree of Scrutiny

"The first step under the *Anderson/Burdick* framework is to determine whether this burden on the associational rights of political parties is 'severe'." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 586 (6th Cir. 2006). "The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Schmitt v. Larose*, 933 F.3d 628, 639 (6th Cir. 2019) (citation omitted).

Laws imposing "severe" burdens on ballot access are subject to strict scrutiny, while laws imposing lesser burdens trigger less exacting review, and "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* Finally, a burden is "minimal" if it "in no way" limits access to the ballot. *Id.* at 641.

In *Anderson*, the Supreme Court struck as unconstitutional an Ohio statute that required an independent candidate for President to file both a statement of candidacy and a nominating petition in March in order to appear on the general election ballot in November. The Court discussed at length the burden imposed on candidates and their would-be supporters by early filing deadlines:

> An early filing deadline may have a substantial impact on independent-minded voters. In election campaigns, particularly those that are national in

> scope, the candidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; domestic and international developments bring new issues to center stage and may affect voters' assessments of national problems. Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for new candidacies. [ ] **Yet Ohio's filing deadline prevents persons who wish to be independent candidates from entering the significant political arena established in the State by a Presidential election campaign — and creating new political coalitions of Ohio voters — at any time after mid-to-late March. At this point developments in campaigns for the major-party nominations have only begun, and the major parties will not adopt their nominees and platforms for another five months. Candidates and supporters within the major parties thus have the political advantage of continued flexibility; for independents, the inflexibility imposed by the March filing deadline is a correlative disadvantage because of the competitive nature of the electoral process.**

*Anderson*, 460 U.S. at 790-91 (bold added). In short, the Court added, "the independent's judgment must be based on a history that ends in March." *Id.* at 800.

Relying heavily on the reasoning in *Anderson*, the Sixth Circuit held that certain Ohio election regulations, one of which required minor political parties to file a petition 120 days in advance of the primary, imposed a "severe" burden and was unconstitutional. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 590-94 (6th Cir. 2006). The court also noted that "the fact that an election procedure can be met does not mean the burden imposed is not severe." *Id.* at 592.

9

Other courts also have found that early filing requirements imposed on independent voters constitute "severe" burdens and are thus subject to strict scrutiny. *See Cromer v. State of South Carolina*, 917 F.2d 819, 824 (4th Cir. 1990) (March 30 statement-of-candidacy deadline); *Daly v. Tennant*, 216 F. Supp.3d 699, 706 (S.D. W. Va. 2016) (January deadline); *Libertarian Party of Ky. v. Ehler*, 776 F. Supp. 1200, 1205 (E.D. Ky. 1991) (January 29 deadline for minority and independent candidates to file nominating petition); *Cripps v. Seneca Cnty. Bd. of Elecs.*, 629 F. Supp. 1335, 1342-43 (N.D. Ohio 1985) (February 21 deadline for independent candidate nominating petitions).

Here, plaintiffs have produced testimony, both lay and expert, that the January Statement-of-Candidacy deadline creates numerous serious problems for would-be independent candidates for state and local offices:

1) Holding the required state convention in advance of the January deadline means that its organization backs up into the holidays or beyond, at a time when voter and party interest in the next year's election is not high;

2) The early deadline means that would-be candidates cannot evaluate positions taken by majority party candidates later in the year, including votes by incumbents in the legislature's session from January to March/April. Such developments could cause an independent to decide to run against an incumbent, and the early deadline thus diminishes electoral accountability;

3) It is difficult to recruit candidates for office so far in advance of the general election because interest in the election does not rise until later in the spring; and

10

    4) Independents cannot easily determine what the key issues will be until closer to the majority parties' primary, which is in mid-May.

The consequence of these burdens is that would-be candidates do not have sufficient information or motivation to file a Statement of Candidacy so early in the electoral cycle, thereby excluding them from any possibility of appearing on the ballot.

Defendant Fitzgerald argues that filing a Statement of Candidacy — a simple, one-page form — is not burdensome and that anyone considering running for office can file one as a "precautionary" measure. But this argument confuses a *logistical* burden with a *constitutional* burden, as the Fourth Circuit explained in *Cromer*:

> It is true that the specific logistical burden of filing is minimal; it involves a simple, easily done physical act, and a decision which commits to nothing. But that is not the problem. The problem is in having to make the draconian decision at a time when a rational basis for making it does not exist. At this time the party candidates have not been chosen, and even the identity of those who may become candidates may not be known. The election itself is seven months of unfolding events away.

*Cromer*, 917 F.2d at 823.

This reasoning is even more applicable here. While HB 114 also advanced the deadline for major party candidates to file nomination papers to approximately two weeks prior to the independents' Statement-of-Candidacy deadline, the independents' deadline is still *four* months before the primary election and

11

*eleven* months before the general election. The above burdens therefore cannot be remedied by simply filing a one-page form in an informational vacuum.

Therefore, the Court concludes that the January Statement-of-Candidacy deadline constitutes a "severe" burden which must fail unless it is narrowly tailored to advance a compelling state interest. *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014) (citation omitted).

### 2. State's Interests

Defendant Fitzgerald — the sole defendant attempting to defend HB 114[2] — identified the following state interests related to this law: "to ensure the orderly administration of elections and provide notice to the electorate of the identity of candidates"; to "protect the public from fraudulent candidates"; and to promote voter education. (Doc. 56-1 at 13).

However, Fitzgerald does not explain how the acceleration of the Statement-of-Candidacy filing deadline to the end of January actually advances these interests. *See Blackwell*, 462 F.3d at 593 ("The State has made no clear argument regarding the precise interests it feels are protected by the regulations at issue in the case, relying instead on generalized and hypothetical

---

[2] Again, Grimes does not defend the constitutionality of HB 114. Rather, she challenges only Fitzgerald's "standing" and argues against severability.

12

interests identified in other cases.").

Indeed, as summarized in plaintiffs' motion, defendants testified that they were unaware of any problems in Kentucky related to the alleged state interests identified by Fitzgerald. (Doc. 57-1 at 8-10).

In *Anderson* — decided in 1983 — the Supreme Court expressly rejected "voter education" as a state interest that could justify the severe burden of an early filing deadline for independent candidates:

> In the modern world it is somewhat unrealistic to suggest that it takes more than seven months to inform the electorate about the qualifications of a particular candidate simply because he lacks a partisan label.

Anderson, 460 U.S. at 797. It would be safe to say that this is even more true 37 years later.

Finally, Fitzgerald argues that *Anderson* is less persuasive because the election at issue there was a presidential election, and a State's interests are stronger when regulating state and local elections. (Doc. 60 at 9-10). In *Cromer*, however, the Fourth Circuit aptly explained why such an argument is misplaced:

> In accepting the general authority of *Anderson* we specifically reject the state's contention here that that decision applies only to ballot access restrictions upon candidates for national office. With other courts, we believe instead that while national candidacy is an important factor in assessing the legitimacy of such restrictions, ***Anderson* did not turn solely on that factor, but provides general guidance for assessing ballot**

13

> **access challenges by local and state as well as national office candidates and their supporters**.

*Cromer*, 917 F.2d at 822 (bold added).

In sum, HB 114 imposes a severe burden on independent candidates for state and local office in Kentucky and on potential voters for such candidates. The January deadline is earlier than many such deadlines held unconstitutional in cases cited above.

Further, neither the Secretary of State nor the Board of Elections has chosen to defend the statute, and defendant Fitzgerald has failed in her effort to do so. As the Sixth Circuit observed in *Blackwell*, "[t]his system serves to protect the two major parties at the expense of political dialogue and free expression, which is not justified, much less compelling." *Blackwell*, 462 F.3d at 594 (citations omitted).

The Court will therefore grant plaintiffs' motion for summary judgment and issue a permanent injunction against enforcement of Section 1 of HB 114 and Section 14 of SB 60.

## C. Severability

The final question before the Court is whether the unconstitutional portion of HB 114 is severable from its other provisions.[3]

The test for severability under KRS 446.090 and Kentucky common law is whether "it is apparent that the General Assembly

---

[3] Severability as to SB 60 does not appear to be contested.

14

would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly." *Martin v. Commonwealth of Kentucky*, 96 S.W.3d 38, 57-58 (Ky. 2003) (quoting KRS 446.090).

Plaintiffs take no position on severability. Fitzgerald argues in favor of it and Grimes argues against it.

Of course, the positions of these two defendants do not appear to be entirely objective: the portions of HB 114 that altered the structure of the Board of Elections created the job that Fitzgerald now holds and diminished Grimes' authority by removing her as chair of that body.

In any event, it seems clear that these provisions operate independently from the filing deadline discussed above. The Court thus finds that the unconstitutional portion may be severed, leaving the balance of the bill intact.

**IT IS ORDERED** that:

(1) plaintiffs' motion for summary judgment (Doc. 57) be, and is hereby, **GRANTED**;

(2) Fitzgerald's and Grimes' motions for summary judgment (Docs. 56, 58) be, and are hereby, **DENIED**; and

(3) The Court **DECLARES** that Section 1 of HB 114 is **UNCONSTITUTIONAL;** and

(4) A permanent injunction and judgment shall enter concurrently herewith.

This 22nd day of January 2020.



Signed By:
*William O. Bertelsman* WOB
United States District Judge