IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
Northern Division at Covington

| | | |
|---|---|---|
| **John Kyle Sweeney, et. al.** | : | Case No. 2:19-cv-46-WOB |
| **Plaintiffs** | : | |
| v. | : | |
| **Justin Crigler, et. al.** | : | |
| **Defendants** | : | |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES WITH SUPPLEMENTAL DECLARATION OF CHRISTOPHER WIEST ATTACHED

Fitzgerald, in her Opposition [RE#83] does not dispute (1) that Plaintiffs are prevailing parties entitled to their reasonable attorney fees or costs; or (2) that Plaintiffs' Counsel have established appropriate market rates. Nor does Fitzgerald contest the costs. That, then, makes this Reply rather straightforward.

Fitzgerald solely contests the involvement of Mr. Winter and Mr. Bruns in this matter at all, and challenges their time generally, and she contests Mr. Wiest charging travel time that she caused to be incurred in this case at his full rate.

1. <u>The Bruns and Winter invoices and charges</u>

As set forth in the declarations in this case, and the attached invoices, Mr. Bruns and Mr. Winter reviewed, edited, and made changes to pleadings prior to their submittal to the Court, while Mr. Wiest took the laboring oar for initial drafts. [RE#82-2; #82-3; #82-4; see, also, Supplemental Declaration Wiest, attached]. One need look no further than the invoices themselves for evidence of this. Take the 18-page complaint that was filed [RE#1]: Mr. Wiest spent 18.5 hours preparing the complaint. [RE#82-2]; Mr. Bruns spent 0.8 hours proofreading, reviewing it, and providing edits [RE#82-3], and Mr. Winter spent no time at all on the final

1

review of it.  [RE#82-4].  The next major pleading was the emergency motion for a temporary restraining order, supported by two declarations, that totaled 32 pages.  [RE#13].  Mr. Wiest spent 16.6 hours on drafting it and the supporting declarations, and researching it.  [RE#82-2].  Mr. Bruns spent 1.7 hours proofreading, reviewing it, and providing edits [RE#82-3], and Mr. Winter spent no time at all on the final review of it.  [RE#82-4].

The next motion response was to a motion to change venue, which involved 7 pages of response and a declaration.  [RE#18].  Mr. Wiest spent 3.8 hours drafting that response, and Mr. Winter and Mr. Bruns spent 0.4 and 0.8 hours, respectively, reviewing and revising it.  [RE#82-2; RE#82-4; RE#82-3].

The next motion response was to a motion to dismiss, in which Mr. Wiest spent 11.9 hours drafting and researching a 25-page response, Mr. Bruns spent 2.2 hours reviewing the initial pleading and offering edits and changes to our motion as well as reviewing cases and conducting some legal research in support of same, and Mr. Winter spent 0.5 hours with final edits.  [RE#82-2; RE#82-3; RE#82-4].

This pattern of Mr. Wiest taking the laboring oar, and Mr. Bruns and Mr. Winter providing limited, but substantive and important, review, continued throughout this case.  The fact of the matter is that without that review, errors would have been made; extra sets of eyes on a multi-page document, particularly eyes with seasoned perspectives, is critical to filing timely, thorough, and error free pleadings.  This was not a case in which there were hundreds of hours per attorneys, in which there was sought millions in attorney fees – to the contrary, the undersigned counsel were cognizant of the need to practice this case as efficiently as possible, and they did just that.

But perhaps nowhere is this efficiency most clearly demonstrated, and nowhere was more time spent, than preparing the dispositive motions in this case. Plaintiffs submitted a Motion for Summary Judgment, with a declaration, that totaled 35 pages. [RE#57]. They submitted a Response to Fitzgerald's Motion that totaled 24 pages. [RE#62]. And a reply that totaled 15 pages. [RE#66]. That is 79 pages of pleadings.

Mr. Wiest spent a combined 80.7 hours working on these motions, responses, and replies. [RE#82-2]. Mr. Winter spent 8.8 hours reviewing and editing and conducting additional research where necessary on these documents. [RE#82-4]. Mr. Bruns spent 11.2 hours reviewing and editing and conducting additional research where necessary on these pleadings. [RE#82-3]. As it turns out, this review and editing and work on these pleadings constituted more than half of Mr. Winter's time on the case, and more than a third of Mr. Bruns' work.

The point is that the time entries that Fitzgerald complains are not duplicative, but rather, as reflected in the billing records that Mr. Wiest took primary responsibility for first drafts, while Mr. Winter and Mr. Bruns provided review. It is notable as well, that Ms. Fitzgerald <u>herself was represented by two attorneys</u>, the Secretary of State a third attorney, and before Ms. Fitzgerald's involvement, Mr. Dearing was represented by two attorneys (not to mention the Boone County Defendants who had their own counsel). For Ms. Fitzgerald to herself be represented by two attorneys throughout most of this litigation, while complaining that a group of seven plaintiffs should have been represented by a single attorney smacks of disingenuousness.

The total scope of the requested award in this case belies any serious argument that this case was not handled or staffed appropriately. For instance, in *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2006), another elections related case, approximately 14 years ago, the Plaintiffs sought $967,593.25 in fees. The Sixth Circuit observed there – and

3

the observation is relevant and applicable here – that given "the extremely expedited pace in the few short months before the 2012 presidential election and complexity of the litigation, the need for multiple attorneys to handle the various legal and factual facets of the two cases is obvious." *Id.* at 704-705.

Elections related litigation – and this case was no exception – requires fast paced deadlines, on-the-fly reactions, and the need to staff a case with more than one attorney. Defendant Fitzgerald's own staffing of this matter demonstrates as much. Similarly, as in *Husted*, "detailed billing records and submitted declarations stating that [discussions between counsel] permitted senior lawyers to provide important strategic guidance to more junior lawyers, without duplicating efforts, thereby increasing efficiency." *Id.* at 706.

It should be noted that Ms. Fitzgerald single handedly expanded this litigation – she was the one that demanded to take the deposition of each of the Plaintiffs – and she was the one who litigated almost every issue that could be litigated. As in Husted, "Defendant[] mounted a vigorous opposition [and was] therefore in no position to complain." *Id.*

In *Husted*, the Sixth Circuit affirmed the attorney fee award that "included six attorneys, [which] charged 300 hours for drafting and editing the complaint and preliminary injunction motion, and an additional 130 hours, involving six attorneys, for drafting and editing their twenty-page reply." Id. at 707. In this case, the entire case was litigated for less total hours than these preliminary matters in *Husted*. As the Court observed in *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983), "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and is customary practice of multiple-lawyer litigation." Here, the record reflects just such contributions.

4

The attorney fees sought in the present matter are modest and fully compensable. The matter was appropriately staffed and the use of the lawyers on the team were justifiable and appropriate. No reduction is appropriate for staffing this matter in that Mr. Wiest handled the laboring oar of this litigation, while Mr. Bruns and Mr. Winter took on a limited, but important and substantive, review role. The time was modest, reasonable, and appropriate; no reduction is appropriate for the time reasonably spent by Mr. Winter and Mr. Bruns.

Finally, Fitzgerald argues that an across the board reduction is appropriate. Counsel's declarations reveal that they have already removed duplicative and unnecessary time charges. [RE#82-2; RE#82-3; RE#82-4]. What is particularly aggravating about Ms. Fitzgerald's arguments is that she, personally, and all by herself, was largely responsible for almost the entirety of the time and expenses in this matter – she is the party that insisted on deposing each of the seven Plaintiffs and their expert witness (at the eleventh hour); she is the party that relieved herself of a consent order that would have insulated her from any attorney fee award; and she is the party that chose to vigorously litigate each and every aspect of this case.

2. Wiest Travel Time

Fitzgerald's final objection is to the travel time of Mr. Wiest to travel to and from Frankfort for two sets of depositions. She argues that this time should be reduced by half. It is absolutely true that the District Court made such a reduction in *Brooksbank v. Koch*, but *Brooksbank v. Koch* was materially different. First, *Brooksbank* was a Western District case. Second, *Brooksbank* was a case in which out of town attorneys (the undersigned) filed a case in Louisville, for a longstanding client of Mr. Wiest, and sought to travel into the jurisdiction for depositions and the case.

This case is different. This case was venued in the Northern Division of this Court, miles from where Mr. Wiest's office was located – and remained venued here despite the efforts to move it out of this division. Moreover, as Mr. Wiest's supplemental declaration reveals, substantive work was done during the trip back from Frankfort on the first deposition taken there, and on the way to the depositions in Frankfort for the second of the two trips. [Supplemental Declaration, Wiest].

Which brings us to the next point, which is the point why travel time should be fully compensated: Fitzgerald unduly delayed seeking discovery in this case until mere days before the discovery cutoff. That, in turn, prompted a discovery dispute which resolved itself via a teleconference with the magistrate judge, in which the parties agreed to cooperate and undertake herculean efforts to cram 10 depositions – 8 of them depositions that Ms. Fitzgerald herself wanted to take – all of which needed to be taken in a matter of 10 days. [RE#45]. That also required Mr. Wiest to need to travel to Frankfort, twice, to accommodate the schedules and teleconferencing facilities of Ms. Fitzgerald's counsel.

Given that the travel time that Ms. Fitgerald now complains of was necessitated by her own actions, including her seeking discovery right before the cutoff, and occurred because Mr. Wiest sought to shift his entire calendar to accommodate her 11th hour request, this attack on the travel time truly is an example of no good deed going unpunished.

Thus, for Defendant Fitzgerald to argue that under these circumstances, the travel time which she herself necessitated, is not compensable, or should somehow be reduced, is absurd.

Notably, the Sixth Circuit has suggested that travel time is fully compensable. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994) (holding that travel time is fully compensable). Moreover, Eastern District of Kentucky cases take a different approach on travel time than the

6

Western District, and generally hold that it is generally fully compensable. *Crouch v. Rifle Coal Co.*, LLC, 2010 U.S. Dist. LEXIS 74984 (EDKY 2010); *Amburgey v. Astrue*, No. 08-335-GWU, No. 99-507-JBC, 2010 U.S. Dist. LEXIS 12605, 2010 WL 567324, at *1 (E.D. Ky. Feb. 12, 2010); *ACLU of Ky. v. McCreary County, Ky.*, 2009 U.S. Dist. LEXIS 22206, 2009 WL 720904, at *4 (E.D. Ky. 2009); *Anderson v. Wilson*, 357 F. Supp.2d 991, 1000 (E.D. Ky. 2005).

As Judge Thapar ruled in *Crouch*, "[w]ithout a sound reason to the contrary, [Plaintiff] should receive attorney fees for [her counsel's] travel time." 2010 U.S. Dist. LEXIS 74984.

3. <u>Where, as here, the entirety of the fees and expenses were driven by Defendant's actions, no reduction is appropriate.</u>

Case law is clear that where significant hours are expended by Plaintiffs due to the litigation tactics of the Defendants, the Defendants cannot then be heard to complain. *Torres v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 127890 (S.D. NY. 2012) ("[t]he Court notes that much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics. Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response."); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (observing that "hours required to litigate even a simple matter can expand enormously" where "attorney is compelled to defend against frivolous motions and to make motions to compel [discovery] compliance"); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) ("defendants' obstructive and dilatory litigation tactics" gave rise to the fees incurred).

4. <u>The award sought in this case is extraordinarily modest in comparison with other expedited elections cases ,and thus no reduction is appropriate</u>.

A simple comparison of this amount, with other expedited elections cases, reveals that these fees and expenses are on the very low end of expedited elections cases in the Sixth Circuit.

7

*Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2006) ($967,593.25 in fees); *ABC v. Brunner*, 2008 U.S. Dist. LEXIS 119364 (SDOH 2008) ($325,540.56); *Project Vote v. Blackwell*, 2009 U.S. Dist. LEXIS 34571 (NDOH 2009) ($321,485.28).

The award sought in this case is less than the total award sought and awarded in another expedited elections case that this Court, the Secretary of State, Board of Elections, and the undersigned participated in: the 2013 redistricting suit, *Brown v. LRC*, 2:13-cv-00068-WOB-GFVT-DJB. Notably, that case, and the rates awarded in it, are over six years old. But many of the same arguments about staffing, hours, conferences, and travel were raised in that case, and rejected by Judge Wehrman. We have attached Judge Wehrman's reasoned opinion because it is equally applicable here.

    5.  Supplemental fees for time spent on this Reply and on the initial fee application should be awarded

Furthermore, supplemental attorney fees for the time spent from February 7, 2020, to the present, should be awarded in the amount of $3,255.00, as provided in the invoice and supplemental declaration.

    6.  Conclusion

Counsel have sought an extraordinarily modest award for attorney fees and expenses in this expedited election case of reasonable attorney fees, totaling $119,005.00, plus an additional $3,255.00 for the time spent since February 7, 2020, for a total of $122,260.00, and costs and expenses totaling $3,296.21, for a total award of $125,556.21.

The entirety of this amount should be awarded.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com


/s/ Thomas B. Bruns_____
Thomas B. Bruns (KBA 84985)
Bruns, Connell, Vollmer, Armstrong
**4750 Ashwood Dr., Ste. 200**
**Cincinnati, OH 45241**
**513-326-0274 (v)**
tbruns@bcvalaw.com

/s/ Robert A. Winter, Jr._____
Robert A. Winter, Jr. (KBA 78230)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
859-250-3337
robertawinterjr@gmail.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants, by filing of same in the Court's CM/ECF system, this 15 day of March, 2020.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

9